UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

HAROLD E. GRIST, JR.,

               Petitioner,

    v.

WARDEN CARVER,

               Respondent.

Case No. 1:26-cv-00092-REP

**INITIAL REVIEW ORDER**

Petitioner Harold E. Grist, Jr., has filed a Petition for Writ of Habeas Corpus challenging Petitioner's state court convictions. *See* Dkt. 3. The Court now reviews the petition to determine whether it is subject to summary dismissal pursuant to 28 U.S.C. § 2243 and Rule 4 of the Rules Governing Section 2254 Cases ("Habeas Rules"). Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Petitioner to file an amended petition if Petitioner intends to proceed.

**REVIEW OF PETITION**

1.     **Standard of Law for Review of Petition**

Federal habeas corpus relief under 28 U.S.C. § 2254 is available to petitioners who show that they are held in custody under a state court judgment and that such custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). The Court is required to review a habeas corpus petition upon receipt to determine whether it is subject to summary dismissal. Habeas Rule 4. Summary dismissal is

INITIAL REVIEW ORDER - 1

appropriate where "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.*

## 2.    Background

Petitioner has not provided many facts about the procedural background of his state criminal case. However, the Court takes judicial notice of the state court decisions in that case. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (holding that a court may take judicial notice of judicial filings and court records).

In the Second Judicial District Court in Nez Perce County, Idaho, Petitioner was convicted of seven counts of lewd conduct with a minor under the age of sixteen, two counts of sexual battery of a minor, and one count of sexual abuse of a child under the age of sixteen. *State v. Grist*, 205 P.3d 1185, 1186 (Idaho 2009) (*Grist I*). Petitioner obtained relief on direct appeal and was granted a new trial. *Id*. at 1191.

On retrial, Petitioner was again convicted of all ten counts. The Idaho Court of Appeals affirmed the convictions but modified Petitioner's sentence so that he received a sentence of life in prison with fifteen years fixed. *State v. Grist*, 275 P.3d 12, 21–22 (Idaho Ct. App. 2012) (*Grist II*). The Idaho Supreme Court denied review on May 9, 2012. *Id*. at 12.

INITIAL REVIEW ORDER - 2

Petitioner then filed a state post-conviction petition. The state district court dismissed the petition in part and denied it in part. The Idaho Court of Appeals affirmed on February 23, 2015. *Grist v. State*, 2015 WL 738124, at *1 (Idaho Ct. App. 2015) (*Grist III*) (unpublished). It appears that the Idaho Supreme Court denied review,[1] but the date on which it did so is not clear from the decision of the Idaho Court of Appeals, nor has Petitioner included that date in the Petition.

Petitioner also filed a motion for correction of sentence under Idaho Criminal Rule 35. The trial court denied the motion, and the Idaho Court of Appeals affirmed on December 6, 2018. *State v. Grist*, 2018 WL 6381106, at *1 (Idaho Ct. App. 2018) (*Grist IV*) (per curiam) (unpublished). The Idaho Supreme Court denied review.

Petitioner returned to the state district court and filed a successive post-conviction petition. The petition was dismissed under Idaho law as untimely and as an improper successive petition. *Grist v. State*, 2020 WL 5904452, at *1 (Idaho Ct. App. 2020) (*Grist V*) (unpublished). The Idaho Court of Appeals affirmed on October 6, 2020, holding that Petitioner had failed to comply with a state procedural rule requiring an appellant to cite authority in support of his claims. *Id*. at *2. The Idaho Supreme Court denied review.

---

[1] In Idaho, all appeals from the state district courts initially go to the Idaho Supreme Court. That court then assigns certain cases to the Idaho Court of Appeals, which is required to decide all such assigned cases. *See* Idaho App. R. 108. Generally, cases that are assigned to the Idaho Court of Appeals are those "involv[ing] existing legal principles" as opposed to cases of first impression. *Id*. Once the Idaho Court of Appeals decides an assigned case, then the losing party may, within 21 days, file a petition for review with the Idaho Supreme Court, which then determines whether to review the decision of the Idaho Court of Appeals. *See* Idaho App. R. 118. Because the Court has found no Idaho Supreme Court decision reviewing the decision of the Idaho Court of Appeals upholding Petitioner's convictions after retrial, the Court concludes that the state supreme court denied review.

INITIAL REVIEW ORDER - 3

Petitioner also filed another Rule 35 motion for correction of sentence. The state district court denied the motion. The Idaho Court of Appeals affirmed on December 22, 2020, and the Idaho Supreme Court denied review. *State v. Grist*, 2020 WL 7624864, at *3 (Idaho Ct. App. 2020) (*Grist VI*) (per curiam).

On February 7, 2026, at the earliest,[2] Petitioner filed the instant federal habeas corpus petition. Dkt. 3. The Petition asserts that Petitioner's right to an impartial jury was violated because he knew two of the jurors in his trial. *Id*. at 8.

**3.    Discussion**

For the following reasons, the Petition appears untimely and subject to dismissal.

**A.    *Statute of Limitations Standards of Law***

The Antiterrorism and Effective Death Penalty Act ("AEDPA") generally requires a petitioner to seek federal habeas corpus relief within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[3] 28 U.S.C. § 2244(d)(1)(A).

---

[2] Prisoners are usually entitled to the benefit of the "mailbox rule," which provides that a legal document is deemed filed on the date a petitioner delivers it to the prison authorities for filing by mail, rather than the date it is actually filed with the clerk of court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988).

[3] Several other triggering events for the statute of limitations exist—but are less common—and are set forth in subsections 2244(d)(1)(B)-(D):

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

The first step in a statute of limitations analysis is determining the date when the petitioner's conviction became final. Under 28 U.S.C. § 2244(d)(1)(A), the date of "finality" that begins the one-year time period is marked as follows, depending on how far a petitioner pursues his case:

| **Action Taken** | **Finality Occurs** |
|---|---|
| No appeal is filed after state district court order or judgment | 42 days later, *see* Idaho Appellate Rule 14 |
| Appeal is filed and Idaho Court of Appeals issues a decision, but no petition for review is filed with the Idaho Supreme Court | 21 days later, *see* Idaho Appellate Rule 118 |
| Appeal is filed and Idaho Supreme Court issues a decision or denies a petition for review of an Idaho Court of Appeals decision, and Petitioner does not file a petition for writ of certiorari with the United States Supreme Court | 90 days later, *see* United States Supreme Court Rule 13 |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, and the petition is denied | Date of denial |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, the petition is granted, and the United States Supreme Court issues a decision | Date of decision |

---

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

INITIAL REVIEW ORDER - 5

In each of the above instances, if the petitioner stops pursuing the case and does not take the next step within the time specified, "finality" is measured from entry of final judgment or order, not from a remittitur or mandate, which are mere formalities. *Gonzalez v. Thaler*, 565 U.S. 134, 150–51 (2012); *Clay v. United States*, 537 U.S. 522, 529 (2003); *Wixom v. Washington*, 264 F.3d 894, 898 n.4 (9th Cir. 2001). That is, finality occurs on the date of the final order terminating direct review. In Idaho, the final order terminating a direct appeal is either (1) the Idaho Supreme Court's decision in a direct appeal, or (2) in cases where the Idaho Court of Appeals decides the direct appeal and the Idaho Supreme Court does not review that decision, the Idaho Supreme Court's denial of a petition for review from the decision of the court of appeals.

The one-year statute of limitations can be tolled (or paused) under certain circumstances. AEDPA provides for tolling for all of "[t]he time during which a properly filed application for State post-conviction or other collateral review … is pending." 28 U.S.C. § 2244(d)(2). A motion to reduce a sentence that is not a part of the direct review process and that requires re-examination of the sentence qualifies as a collateral review application that tolls the one-year statute of limitations. *Wall v. Kholi*, 562 U.S. 545, 555-56 (2011). Thus, to the extent that a petitioner properly filed an application for postconviction relief or other collateral challenge in state court, the one-year federal limitations period stops running on the filing date of the state court action and resumes when the action is concluded. To warrant tolling, the collateral relief application must be "properly filed," meaning that it conforms to state rules governing conditions to filing, including filing deadlines. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005).

INITIAL REVIEW ORDER - 6

The time before a petitioner files an initial application for collateral review in state court, however, does not toll the statute of limitations. *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999), *abrogated on other grounds as stated in Nedds v. Calderon*, 678 F.3d 777, 781 (9th Cir. 2012). In addition, AEDPA "does not permit the reinitiation of the [federal] limitations period that has ended before the state petition was filed." *Ferguson v. Palmateer*, 321 F.3d 820, 822 (9th Cir. 2003).

"Pending," as set forth in § 2244(d)(2), does not include the time period for filing a petition for writ of certiorari before the United States Supreme Court to challenge denial of a collateral review petition. *Lawrence v. Florida*, 549 U.S. 327, 337 (2007). For purposes of calculating the federal statute of limitations, this statutory tolling provision applies only to "pending" actions; therefore, the additional 21-day, 42-day, and 90-day time periods associated with the calculation of finality after direct appeal are *not* applied to extend the tolling periods for post-conviction actions. Further, each time statutory tolling ends, the statute of limitations does not restart at one year. Instead, it begins running at the place where it stopped before the post-conviction action was filed.

If, after applying statutory tolling, a habeas petition is deemed untimely, a federal court cannot entertain the petition unless the petitioner establishes that equitable tolling should be applied to toll the remaining time period. *See Jorss v. Gomez*, 311 F.3d 1189, 1192 (9th Cir. 2002) ("[A] court must first determine whether a petition was untimely under the statute itself before it considers whether equitable tolling should be applied."). The limitations period may be equitably tolled only under exceptional circumstances.

INITIAL REVIEW ORDER - 7

A habeas petitioner "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal quotation marks and alteration omitted). The petitioner bears the burden of showing a factual basis for equitable tolling. *United States v. Marolf*, 173 F.3d 1213, 1318 at n. 3 (9th Cir. 1999).

"[W]hether a petitioner acted with reasonable diligence is a fact-specific inquiry." *Fue v. Biter*, 842 F.3d 650, 654 (9th Cir. 2016). For a petitioner to satisfy the diligence prong of equitable tolling, he "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith v. Davis*, 953 F.3d 582, 598–99 (9th Cir. 2020) (en banc). In *Smith*, for example, the Ninth Circuit denied equitable tolling because the petitioner "failed to exercise reasonable diligence during the 10 months available after [the extraordinary circumstance ended] and before … the statute of limitations expired." *Id.* at 586.

The second prong of equitable tolling requires extraordinary circumstances that prevented a timely filing. Equitable tolling is not justified by mere oversight or negligence. *Sossa v. Diaz*, 729 F.3d 1225, 1229 (9th Cir. 2013). For an attorney's error to constitute an extraordinary circumstance warranting equitable tolling, the attorney's conduct must be "egregious." *Holland*, 560 U.S. at 651. A "garden-variety claim of

INITIAL REVIEW ORDER - 8

excusable neglect," such as miscalculation of a filing deadline, is insufficient. *Id*. (internal quotation marks omitted).

Additionally, there must be a causal link between the extraordinary circumstance and the untimeliness of the petition. However, this causal nexus requirement "does not impose a rigid impossibility standard on litigants, and especially not on pro se prisoner litigants." *Smith*, 953 F.3d at 600 (internal quotation marks omitted).

Ignorance of the law alone is not an appropriate ground for equitable tolling. *Rasberry v. Garcia*, 448 F.3d 1150 (9th Cir. 2006). However, a prisoner's actual lack of access to legal materials may, under certain circumstances, establish either (1) the existence of a state-created impediment to filing an application under § 2244(d)(1)(B), which triggers a later starting date for the limitation period; or (2) a reason to equitably toll the statute of limitation. *See Whalem/Hunt v. Early*, 233 F.3d 1146 (9th Cir. 2000).

The Ninth Circuit has "rejected the argument that lack of access to library materials automatically qualified as grounds for equitable tolling." *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001). Instead, a petitioner must establish that he could not have filed "a basic form habeas petition," within the limitations period, despite exercising reasonable diligence. *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1014 (9th Cir. 2009) (denying tolling when a petition was 340 days late because, for three years, the petitioner "had access to all of the documents necessary for his *Faretta* self-representation claim. He could have developed that argument, outlined the other arguments and the facts underlying those arguments on the form habeas petition, and then sought to amend his petition when he got more information.").

INITIAL REVIEW ORDER - 9

The statute of limitations is also subject to an actual innocence, or miscarriage of justice, exception. A petitioner who satisfies the actual innocence gateway standard may have his otherwise time-barred claims heard on the merits. *McQuiggin v. Perkins*, 569 U.S. 383, 393–94 (2013); *Lee v. Lampert*, 653 F.3d 929, 937 (9th Cir. 2011) (en banc). Actual innocence in this context means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

In asserting actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A time-barred claim may be heard under the actual innocence exception only if "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [Petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, it must be more likely than not that *every* reasonable juror would vote to acquit.

This extremely demanding standard "permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). A court considering whether a petitioner has established actual innocence must consider "all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). The actual innocence analysis "does not turn on discrete findings regarding disputed points of fact, and '[i]t is not the district court's independent judgment as to whether reasonable doubt exists that

INITIAL REVIEW ORDER - 10

the standard addresses.'" *House v. Bell*, 547 U.S. 518, 539-40 (2006) (quoting *Schlup*, 513 U.S. at 329 (alteration in original)). Rather, the court must "make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329.

### B.    The Claims in the Petition Appear Untimely

Because Petitioner does not contend that he filed file a petition for writ of certiorari with the U.S. Supreme Court, Petitioner's convictions became final 90 days after the Idaho Supreme Court's denial of review of the decision of the Idaho Court of Appeals on direct appeal from Petitioner's convictions on retrial. Because review was denied on May 9, 2012, the convictions became final on August 7, 2012, and the statute of limitations began running the next day. Thus, absent tolling, the statute of limitations for filing a federal habeas petition would have expired on August 8, 2013.

The Court does not know the exact dates when Petitioner filed his initial or successive post-conviction petitions, or his Rule 35 motions. However, for purposes of this decision, the Court will assume that Petitioner is entitled to statutory tolling for all of the time between finality and the latest decision of the Idaho Court of Appeals. That court decided *Grist VI* on December 20, 2020, meaning that the statute of limitations presumably began to run on December 21, 2020, and any federal petition must have been filed on or before December 21, 2021.

Even giving Petitioner the benefit of tolling during the entirety of all of his state court proceedings, the Court concludes that Petitioner's February 7, 2026 Petition was

INITIAL REVIEW ORDER - 11

filed over four years too late, at least. Accordingly, the Petition is subject to dismissal on this basis.

Petitioner may file an amended petition addressing the statute of limitations issue within 28 days. Petitioner should include in the amended petition all relevant dates of his initial filings and the final decisions in each of his state court cases, and he should set forth any reason why he believes the instant Petition is not untimely.

## APPLICATION TO PROCEED IN FORMA PAUPERIS

Petitioner has requested in forma pauperis status. Good cause appearing, Petitioner's Application will be granted. Petitioner must pay the $5.00 filing fee when Petitioner next receives funds in his inmate trust account.

## REQUEST FOR APPOINTMENT OF COUNSEL

Because an amended petition is required for Petitioner to proceed, the Court will deny Petitioner's request for appointment of counsel without prejudice. Petitioner may renew the request for counsel in an amended petition.

## ORDER

**IT IS ORDERED:**

1.  Petitioner's Application to Proceed in Forma Pauperis (Dkt. 1) is GRANTED. Petitioner must pay the $5.00 filing fee when Petitioner next receives funds in Petitioner's inmate trust account.

2.  Petitioner's request for appointment of counsel (contained in the Petition) is DENIED without prejudice.

INITIAL REVIEW ORDER - 12

3.      Within 28 days after entry of this Order, Petitioner must file an amended petition explaining any reason why his Petition is not subject to dismissal as untimely. If Petitioner does not do so, this case will be dismissed. Dismissal in this manner would operate as an adjudication on the merits and would prevent Petitioner from re-filing a federal habeas corpus petition challenging the same conviction or sentence.

DATED:  April 10, 2026

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

INITIAL REVIEW ORDER - 13